UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

CIVIL ACTION NO. 19-11529-RGS

AMGUARD INSURANCE COMPANY

v.

LANDON RICHMOND

MEMORANDUM AND ORDER ON
DEFENDANT'S MOTIONS FOR SUMMARY JUDGMENT

May 10, 2021

STEARNS, D.J.

AmGUARD Insurance Company (AmGUARD) alleges that Landon Richmond's careless smoking caused a fire at his upstairs art gallery (Know No Truth) at 228 Newbury Street in Boston. The fire also damaged the premises of AmGUARD's insured, Pranzini Inc., which operated Piattini Wine Bar (Piattini) on the ground floor. Richmond now moves for summary judgment. For the following reasons, the court will deny the motion.

## BACKGROUND

Piattini's owner, Josephine Megwa, and her employees regularly smelled smoke and incense emanating from Richmond's gallery. Pl.'s Ex. 4 (Megwa Dep.) (Dkt # 61-6) at 16, 22, 25, 27, 51; Pl.'s Ex. 9 (Stoyanova Dep.) (Dkt # 61-11) at 27; Pl.'s Ex. 10 (Cano Dep.) (Dkt # 61-12) at 52-53, 59. She complained of the odor several times to Charles Talanian, the director of

business development for the property manager of 226-228 Newbury Street. Pl.'s Ex. 8 (Talanian Dep.) (Dkt # 61-10) at 53, 118; Pl.'s Ex. 5 (Dkt # 61-7); Pl.'s Ex. 6 (Dkt # 61-8). Richmond admits that he lit candles and burned incense in the gallery. Pl.'s Ex. 3 (Richmond Dep.) (Dkt # 61-5) at 151, 157. Richmond also admits to smoking marijuana on a regular basis, though he denies ever having smoked marijuana or cigarettes in the gallery.[1] *See id.* at 148-149; Pl.'s Ex. 2 (Richmond Interrogs.) (Dkt # 61-4) No. 19.

On October 16, 2016, at 5:30pm, Richmond noticed a plume of smoke while waiting on two customers at the front of the gallery. Richmond Dep. at 102. The smoke trail led to the bathroom at the rear of the gallery where Richmond saw a burning stack of cardboard boxes that had been stored against the wall of the bathroom. *Id.* at 104, 108; Richmond Interrogs. No. 8. No one other than Richmond, who had last used the bathroom several hours earlier, had regular access to bathroom. Richmond Dep. at 93, 110. Despite Richmond's attempts to extinguish the fire,[2] it reignited, forcing the

---

[1] Employees of Piattini had observed Richmond smoking outside the art gallery on occasion. Stoyanova Dep. at 19. Accounts vary, however, as to how often Richmond smoked, the locations where he smoked, and what he smoked (cigarettes or marijuana).

[2] Luis Cano, the head chef at Piattini, also attempted to help put out the fire. Cano Dep. at 14, 17.

evacuation of the building. *Id.* at 106, 108-110, 113; Richmond Interrogs. No. 8.

The Boston Fire Department arrived at around 6:00pm, followed by the Fire Investigation Unit. Pl.'s Ex. 4 (O'Brien Dep.) (Dkt # 61-6) at 42-44. Talanian, who also came to the scene, observed Richmond "laughing inappropriately." Talanian Dep. at 115. Fire Investigator Richard Fullam began his inspection after the fire was extinguished and remained at the scene for 70 minutes. Pl.'s Ex. 19 (Fullam Dep.) (Dkt # 61-21) at 14, 46.[3] Fullam determined that the suppression efforts had not compromised the fire scene. *Id.* at 39. Finding no evidence of candles, incense, cigarette butts, ashtrays, or other smoking materials in the bathroom, he concluded that the fire's cause was electrical. *Id.* at 37-38, 42.

After the fire, Richmond closed the gallery. S. Richmond Dep. at 41. The odor of smoke at Piattini disappeared with his departure. Megwa Dep. at 24, 55, 69. AmGUARD filed this negligence action in the federal district court on July 12, 2019, invoking the court's diversity jurisdiction. On February 26, 2021, Richmond moved for summary judgment.

---

[3] Richmond left the scene before the fire had been put out; Fullam attempted to contact him but could not reach him. Fullam Dep. at 35. Richmond returned later that night to retrieve personal belongings. Talanian Dep. at 97.

## DISCUSSION

Summary judgment is appropriate when, based upon the pleadings, affidavits, and depositions, "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "To succeed, the moving party must show that there is an absence of evidence to support the nonmoving party's position." *Rogers v. Fair*, 902 F.2d 140, 143 (1st Cir. 1990). However, "when the facts support plausible but conflicting inferences on a pivotal issue in the case, the judge may not choose between those inferences at the summary judgment stage." *Coyne v. Taber Partners I*, 53 F.3d 454, 460 (1st Cir. 1995).

Richmond argues that AmGUARD's case, including the opinion of its fire cause and origin expert, Daniel Roy, "relies entirely upon speculation and conjecture." Mot. for Summ. J. (Dkt # 60-1) at 1-2. Specifically, he challenges Roy's opinion, based on the smells reported by Megwa and her employees, that Richmond had been smoking in the gallery bathroom on the day of the fire because it ignores "equally probable circumstances which would explain the presence of such odors" of smoke at Piattini. *Id.* at 8. AmGUARD responds that "the record is replete with an enormous amount of direct and circumstantial evidence creating a genuine dispute . . . about the cause of this file [sic]." Opp'n (Dkt # 61) at 10. The court agrees.

"When the cause of an event is not susceptible to a determination by the jury's 'general knowledge of practical affairs', such as a fire, it must be supported by expert testimony." *Woods Hole Oceanographic Inst. v. ATS Specialized, Inc.*, 2021 WL 220098, at *4 (D. Mass. Jan. 21, 2021), quoting *Enrich v. Windmere Corp.*, 416 Mass. 83, 86 (1993).[4] An expert in these circumstances may infer a plausible explanation for an accident from evidence even if the facts "do not clearly point to a determinative cause." *Watson v. Electrolux Pro. Outdoor Prod., Inc.*, 2006 WL 2246416, at *4 (D. Mass. Aug. 4, 2006), citing *Pace v. Ins. Co. of N. Am.*, 838 F.2d 572, 578 (1st Cir. 1988). Such inferences, however, "must be based on probabilities rather than possibilities and may not be the result of mere speculation." *Id.*, quoting *Goffredo v. Mercedes-Benz Truck Co.*, 402 Mass. 97, 101 (1988). In other words, Roy must identify "the factual basis and the process of reasoning which makes the conclusion viable in order to defeat a motion for summary judgment." *Hayes v. Douglas Dynamics, Inc.*, 8 F.3d 88, 92 (1st Cir. 1993).

---

[4] *Compare Petchel v. Collins*, 59 Mass. App. Ct. 517, 522-523 (2003) (no expert was necessary to demonstrate a causal connection between propane tanks and the origin of a fire), *with Triangle Dress, Inc. v. Bay State Serv., Inc.*, 356 Mass. 440, 441-442 (1969) (expert testimony was required where the only evidence was that a fire broke out two hours after the defendant had repaired an air conditioner).

Roy bases his opinion that the fire was caused by human accident, such as an unattended candle, burning incense, or the careless use or disposal of smoking materials, on his personal investigation. *See* Pl.'s Ex. 13 (Roy Rpt.) (Dkt # 61-15) at 13.  He inspected the fire scene on October 19, 2019; he attended a Joint Scene Inspection and a lab exam on November 30, 2016, and March 23, 2017, respectively; and he interviewed the potential witnesses, including Richmond, Richmond's parents, Megwa, employees of Piattini, and members of the Boston Fire Department.

During his investigation, Roy discovered cardboard embedded within a light fixture on the ceiling of the gallery bathroom, which he deduces was intended to cover the fan to prevent smoke from escaping through the air ducts. *See* Pl.'s Ex. 12 (Roy Dep.) (Dkt # 61-14) at 108-109.  He inferred from the regularity with which Richmond smoked and the frequent complaints of the odor of smoke in Piattini that Richmond had a habit of smoking in the gallery, including on the date of the fire.[5]  In his opinion, the burn patterns

---

[5] Some of AmGUARD's evidence concerning Richmond's smoking habit is, as Richmond argues, inadmissible. *See* Reply (Dkt # 64) at 4-6.  For example, Megwa's testimony that she was told that Richmond was observed smoking on the date of the fire is hearsay. *See* Megwa Dep. at 20, 23, 33. The same is true of statements of witnesses who reported hearing that the fire had been caused by a person smoking in the art gallery. *See* Stoyanova Dep. at 69; Pl.'s Ex. 18 (Battistacci Dep.) (Dkt # 61-20) at 33.

were inconsistent with an electrical cause, contrary to the conclusions of Fullam and Richmond's expert, Daniel Slowick, as the fire damage was more extensive on the wall opposite the bathroom's emergency light. *Id.* at 196, 203. He also found no heat or ignition sources in proximity to the cardboard boxes that caught fire. *Id.* at 157.

Richmond's objection to Roy's opinion conflates "speculation and conjecture" with circumstantial evidence and inferences. *See, e.g.*, Mot. at 8. It is true, as Richmond argues, that no witnesses observed an open flame in the gallery or smelled marijuana or cigarette smoke permeating Piattini on the date of the fire. *See, e.g.*, Cano Dep. at 26-27, 50, 53; Stoyanova Dep. at 27; Battistacci Dep. at 29. "Yet tort law often encounters situations in which there are no witnesses and no direct evidence as to the cause of an event that results in harm. Fire cases are one example." *Ricci v. Alternative Energy Inc.*, 211 F.3d 157, 162-163 (1st Cir. 2000); *see also Minerals & Chems. Philipp Corp. v. S.S. Nat'l Trader*, 445 F.2d 831, 832 (2nd Cir. 1971) ("By the very nature of a fire, its cause must often be proven through a combination of common sense, circumstantial evidence and expert testimony."). The absence of direct evidence, in other words, does not by itself defeat a negligence claim. *See One Beacon Ins. Co. v. Electrolux*, 436 F. Supp. 2d 291, 295 (D. Mass. 2006) (denying summary judgment on

7

negligence claim where plaintiff's expert could not determine with scientific certainty the exact cause of a fire because of a lack of physical evidence).

Alternatively, Richmond argues that Roy arrived at his conclusion through *negative corpus*, a process of elimination akin to differential diagnosis that is deemed unsound by the National Fire Protection Association (NFPA)'s Guide for Fire and Explosion Investigations 921, the handbook on which fire causation investigators generally rely. Mot. at 9. NFPA 921 § 19.6.5 defines this methodology as "[i]dentifying the ignition source for a fire by believing to have eliminated all ignition sources found, known, or suspected to have been present in the area of origin, and for which no supporting evidence exists." However, as AmGUARD notes, NFPA 921 does approve a process of eliminating alternative causes of a fire so long as a "[d]etermination of the ignition source [is] based on data or logical inferences drawn from that data" or "derived from evidence, observations, calculations, experiments, and the laws of science." *Id.*; *accord Sarro v. Philip Morris USA Inc.*, 857 F. Supp. 2d 182, 186 (D. Mass. 2012) (collecting cases).

The First Circuit has cautioned that "the Daubert regime should be employed only with great care and circumspection at the summary judgment stage." *Cortes–Irizarry v. Corporacion Insular De Seguos*, 111 F.3d 184, 188

(1st Cir. 1997). *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), imposes a duty on federal trial judges to play the role of "gatekeeper," ensuring that the fact-finding process does not become distorted by "expertise that is *fausse* and science that is junky." *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S. 137, 159 (1999) (Scalia, J., concurring). *Daubert*, however, as stressed in the advisory note to the December 1, 2000 amendment to Fed. R. Evid. 702, "did not work a 'seachange over federal evidence law,' and 'the trial court's role as a gatekeeper is not intended to serve as a replacement for the adversary system.'" *Cf. United States v. Mitchell*, 365 F.3d 215, 245 (3d Cir. 2004) (Becker, J.) ("[T]he court is *only* a gatekeeper, and a gatekeeper alone does not protect the castle.").

> *Daubert* does not require that a party who proffers expert testimony carry the burden of proving to the judge that the expert's assessment of the situation is correct. . . . In short, *Daubert* neither requires nor empowers trial courts to determine which of several competing theories has the best provenance. It demands only that the proponent of the evidence show that the expert's conclusion has been arrived at in a scientifically sound and methodologically reliable fashion.

*Ruiz-Troche v. Pepsi Cola of Puerto Rico Bottling Co.*, 161 F.3d 77, 85 (1st Cir. 1998) (citations omitted).

Roy's expert report satisfies the *Ruiz-Troche* test.[6] Whether his opinion will ultimately satisfy a jury is a matter for the trial process to determine. "Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky, but admissible evidence." *Daubert*, 509 U.S. at 596.

## ORDER

For the foregoing reasons, Richmond's motion for summary judgment is <u>DENIED</u>. The Clerk will schedule a date for trial at a time practicable given the current pandemic.

SO ORDERED.

/s/Richard G. Stearns
UNITED STATES DISTRICT JUDGE

---

[6] Certain of Roy's inferences give the court pause – particularly the generalization that "people who smoke tend to lie." Roy Dep. at 156-158. An expert's theory "based on nothing more than the fact that the defendant was a smoker . . . [i]s 'nothing more than a hunch that fails to satisfy Fed. R. Evid. 702(b)'s evidence and data-based standard.'" *Pac. Indem. Co. v. Dalla Pola*, 65 F. Supp. 3d 296, 303 n.2 (D. Mass. 2014), quoting *State Farm Fire & Cas. Co. v. Steffen*, 948 F.Supp.2d 434 (E.D. Pa. 2013). But the "smokers lie" insinuation, while it may be fodder for cross-examination, is not the linchpin or by any means central to Roy's opinion.